**No. 2023-2104**

# In the
# United States Court of Appeals
# for the Federal Circuit

JOHN BOYD, JR., KARA BOYD,

*Plaintiffs,*

LESTER BONNER, PRINCESS WILLIAMS,

*Plaintiffs-Appellants,*

v.

UNITED STATES,

*Defendant-Appellee.*

Appeal from the United States Court of Federal Claims,
No. 1:22-cv-01473-EJD.
The Honorable Edward J. Damich, Judge Presiding.

## BRIEF OF PLAINTIFFS-APPELLANTS

ADAM J. LEVITT
NADA DJORDJEVIC
DiCELLO LEVITT LLP
10 North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
alevitt@dicellolevitt.com
ndjordjevic@dicellolevitt.com

*Counsel for Plaintiffs-Appellants*
*Lester Bonner* and *Princess Williams*

COUNSEL PRESS · (866) 703-9373 PRINTED ON RECYCLED PAPER

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-2104

**Short Case Caption** Boyd et al. v. USA

**Filing Party/Entity** Plaintiffs Lester Bonner and Princess Williams

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/13/2023

Signature: /s/ Nada Djordjevic

Name: Nada Djordjevic

FORM 9. Certificate of Interest | Form 9 (p. 2) March 2023

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Lester Bonner, an individual | | |
| Princess Williams, an individual | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Adam Levitt, DiCello Levitt LLP | Evielle Dawkins, DiCello Levitt LLP | |
| Diandra DeBrosse Zimmermann, DiCello Levitt LLP | Nabeha Shaer, Ben Crump Law | |
| Eli Hare, DiCello Levitt LLP | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |



Save for Filing

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .... i
TABLE OF CONTENTS .... iv
TABLE OF AUTHORITIES .... v
STATEMENT OF RELATED CASES .... 1
JURISDICTIONAL STATEMENT .... 2
STATEMENT OF THE ISSUES .... 3
STATEMENT OF THE CASE .... 3
A. FACTUAL BACKGROUND .... 3
B. PROCEDURAL BACKGROUND .... 9
SUMMARY OF ARGUMENT .... 9
STANDARD OF REVIEW .... 12
ARGUMENT .... 13
A. The District Court Erred In Dismissing Counts I and II of the Complaint for Failure to State a Claim. .... 13
1. Plaintiffs Pleaded All of the Elements of a Binding Contract With The Government. .... 14
a) Plaintiffs Plausibly Pleaded Mutuality of Intent to Contract .... 15
b) Plaintiffs Have Plausibly Pleaded Consideration .... 21
c) Lack of Ambiguity in Offer and Acceptance .... 25
d) The Government Authorized The Secretary To Provide Specific Debt Relief To Eligible SDFs Through Whatever Means The Secretary Chose To Use .... 28
CONCLUSION .... 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akanthos Opportunity Master Fund, L.P. v. U.S.*
148 Fed. Cl. 647 (2020) ........................................................................17

*Am. Bankers Ass'n v. U.S.*,
932 F. 3d 1375 (Fed. Cir. 2019) ........................................................15

*Am. Ground Transp., Inc. v. U.S.*,
165 Fed. Cl. 659 (2023) ..........................................................21, 22, 24

*Cebe Farms v. U.S.*
103 Fed. Cl. 174 (2012) ........................................................................32

*Chevron U.S.A. Inc. v. U.S.*,
155 Fed. Cl. 344 (2021) ........................................................................12

*D & N v. U.S.*,
331 F.3d 1374 (Fed. Cir. 2003) ....................................................14, 28

*Davis Wetlands Bank, LLC v. U.S.*,
114 Fed. Cl. 113 (2013) ........................................................................25

*Dehne v. U.S.*,
970 F.2d 890 (Fed. Cir. 1992) ..............................................................13

*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*,
651 F.3d 722 (7th Cir. 2011) ................................................................24

*Frankel v. U.S.*,
118 Fed. Cl. 332 (2014) ....................................................................25, 26

*Girling Health Sys., Inc. v. United States*, 22 Cl. Ct. 66, 71-72 (1990) ..................18

*Goltra v. United States*,
119 Ct. Cl. 217 (1951) ..........................................................................23

*Gould, Inc. v. U.S.*,
935 F.2d 1271 (Fed. Cir. 1991) ............................................................13

*H. Landau & Co. v. U.S.*,
886 F.2d 322 (1989) (Fed. Cir. 1989), *as amended on reh'g* (Dec. 11, 1989) ....................31

*Humlen v. United States*,
49 Fed. Cl. 497 (2001) ....................32

*Laughrin v. U.S*,
573 U.S. 351 (2014) ....................29

*Local Initiative Health Authority for L.A. County v. U.S.*,
142 Fed. Cl. 1 (2019) ....................31

*Maine Cmty. Health Options v. U.S.*,
140 S. Ct. 1308 (2020) ....................29

*Mississippi Cnty. v. United States*,
130 Fed. Cl. 772 (2017) ....................13

*Moore v. United States*, 157 Fed. Cl. 747, 749 (2022), *rev'd on other grounds* 66 F. 4th 991 (Fed. Cir. 2023) ....................12, 14

*Northrup Grumman Corp. v. U.S.*,
46 Fed. Cl. 622 (2000) ....................23, 24

*Quiman, S.A. de C.V. v. U.S.*,
178 F.3d 1313 (Fed. Cir. 1999) ....................25

*Rd. & Highway Builders, LLC v. U.S.*,
702 F.3d 1365 (Fed. Cir. 2012) ....................22

*Samish Indian Nation v. U.S.*,
419 F.3d 1355 (Fed. Cir. 2005) ....................13

*Skinner v. Switzer*,
562 U.S. 521 (2011) ....................12

*Steinberg v. U.S.*,
90 Fed. Cl. 435 (2009) ....................21

*Williams v. Taylor*,
529 U.S. 362 (2000) ....................29

*XP Vehicles, Inc. v. U.S.*,
121 Fed. Cl. 770 (2015) ........................................................ 18, 19, 20

*Zoubi v. U.S.*,
25 Cl. Ct. 581 (1992) ........................................................ 27, 28

**Statutes**

28 U.S.C. § 1295(a)(3) ........................................................ 2

28 U.S.C. § 1491(a)(1) ........................................................ 2

42 U.S.C. § 17013 ........................................................ 19, 20

Pub. L. No. 117-2, § 1005 ........................................................ 4, 10, 20

Pub. L. No. 117-2, § 2703 ........................................................ 29, 30

Pub. L. No. 117-2, § 3301 ........................................................ 30

Pub. L. No. 117-2, § 6003 ........................................................ 31

Pub. L. No. 117-2, § 9401 ........................................................ 31

Pub. L. No. 117-2, § 9815 ........................................................ 30

**Other Authorities**

7 C.F.R. § 11.1, *et seq.* ........................................................ 5

86 Fed. Reg. 28,329 (May 26, 2021) ........................................................ 17, 20, 24, 32

86 Fed. Reg. 58,859 (Oct. 25, 2021) ........................................................ 26

Fed. R. App. P. 4(a)(1)(B) ........................................................ 3

Restatement (Second) of Contracts § 24 ........................................................ 25

## STATEMENT OF RELATED CASES

Plaintiffs-Appellants are unaware of any cases related to this appeal.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over Mr. Bonner's and Ms. Williams' (together "Plaintiffs") claims pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), which states:

> The United States Court of Federal Claims **shall have jurisdiction** to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, **or upon any express or implied contract with the United States**, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (emphasis added). On October 7, 2022, Plaintiffs filed a Complaint in the Court of Federal Claims against the United States of America ("Government") for breach of express contract and breach of implied contract to pay off 120% of the amounts owing on Plaintiffs' and putative class members' FSA Loans as of January 1, 2021. Appx014-057.

This Court has jurisdiction under 28 U.S.C. § 1295(a)(3), which grants this Court exclusive jurisdiction to hear an appeal from a final decision of the United States Court of Federal Claims. On April 27, 2023, the District Court issued an Opinion and Order granting the Government's Motion to Dismiss in its entirety. Appx001-009. On April 28, 2023, the District Court entered a Judgement in favor of the Government. Appx010. On June 21, 2023, Plaintiffs filed a Notice of Appeal of the District Court's dismissal of their Complaint for failure to state a claim upon

which relief can be granted, Opinion and Order and of the Judgment.[1] Appx013. This appeal is timely because pursuant to Fed. R. App. P. 4(a)(1)(B), the Notice of Appeal was filed within sixty (60) days of the District Court's April 27, 2023 Opinion and Order dismissing Plaintiffs' claims, and the Apil 28, 2023 Judgment.

## STATEMENT OF THE ISSUES

1. Whether the Court of Federal Claims erred as a matter of law in finding that Plaintiffs failed to allege the necessary elements of contract formation, and thereby dismissing their Complaint.

## STATEMENT OF THE CASE

### A. FACTUAL BACKGROUND

On March 11, 2021, President Joseph R. Biden Jr. signed the American Rescue Plan Act of 2021 ("ARPA") into law to provide direct relief to Americans impacted by the economic crisis caused by the COVID-19 pandemic. Appx020, ¶ 30. ARPA sought to stimulate the economy in key sectors such as agriculture. Appx020, ¶ 31. Billions of dollars were invested into programs designed to strengthen the United States' farming system, with the understanding that farmers would maintain or expand their operations. Appx020, ¶ 31.

[1] Plaintiffs Bonner and Williams appeal the District Court's dismissal of Counts I and II of the Complaint. *See* ECF No. 5. Count III, for breach of implied contract arising from the amendment of Section 1006 of ARPA, which was brought on behalf of Plaintiffs John Boyd, Jr. and Kara Boyd, was also dismissed by the District Court. Appx007-09. Plaintiffs are not appealing the dismissal of Count III.

ARPA included a provision related to socially disadvantaged farmers ("SDFs"), as defined in § 1005, such as Plaintiffs, who belong to traditionally-prejudiced ethnic groups including, but not limited to: Native Americans or Alaskan Natives; Asians; Blacks or African Americans; Native Hawaiians or other Pacific Islanders; and Hispanics or Latinos. Appx014-15, ¶¶ 1-2, n.1, Appx018, ¶¶ 21-22, Appx020, ¶ 32. Through § 1005, ARPA required the Secretary of the United States Department of Agriculture ("USDA"), Tom Vilsack, to relieve specified types of debt held by SDFs, including direct FSA loans, with no restrictions placed on how Secretary Vilsack chose to implement § 1005. Appx015, ¶ 3, Appx019, ¶¶ 24-26, Appx020, ¶ 32 ("the Secretary 'shall provide a payment …"), ¶ 33. Congress also appropriated "such sums as may be necessary, to remain available until expended, for the cost of loan modifications and payments under this section." Pub. L. No. 117-2, § 1005(a)(1), 135 Stat. 12-13 (2021).

Guaranteed farm loans are available to farmers who might not otherwise qualify for loans from commercial lenders. Appx019, ¶ 26. Historically, SDFs have experienced intentional and race-based barriers in obtaining the financial assistance necessary to start or maintain farms. Appx019, ¶ 27. By expanding SDFs' access to loans, FSA attempts to address that historic injustice, in part. Appx019, ¶ 27. Under § 1005, SDFs with "direct farm loan[s] made by the Secretary" and "farm loans guaranteed by the Secretary" were eligible to receive "a payment in an amount up to

120 percent of the outstanding indebtedness" on those loans held "as of January 1, 2021." Appx020, ¶ 32. Individuals with FSA loans have the right to appeal any "administrative decision made by an officer, employee, or committee of [FSA] that is adverse." 7 C.F.R. § 11.1, *et seq*. Appx019, ¶ 28.

The USDA designed a system to implement § 1005's directive, including the use of contractual offers contained in a form offer letter, FSA-2601, sent to eligible SDFs to bind those recipients that chose to accept the proffered offer. Appx021-22, ¶¶ 35-41, Appx043-68. The USDA determined which SDFs were eligible under § 1005, and sent an FSA-2601 to just those SDFs informing them that they were "eligible for payment under the American Rescue Plan Act of 2021 (ARPA) Loan Repayment Program. All of your eligible direct loan debt will be paid in full." Appx015, ¶ 4, Appx021, ¶ 36, Appx043, Appx059, Appx064. The FSA-2601s included an attached worksheet with "detailed calculations for [the SDFs'] eligible direct loan debt." Appx021, ¶ 36, Appx043-068. The USDA conditioned paying off the FSA loans on the SDF's acceptance of the USDA's calculations of their eligible debt (which necessarily acts as a waiver of their right to appeal it) and the SDF's agreement to pay all taxes resulting from the Government's payoff of the FSA loans. Appx015, ¶ 5, Appx043, Appx059, Appx064 (authorizing the Government to "pay the 20 percent portion to assist with tax liability"), Appx044, Appx060, Appx065 ("Receiving an ARPA payment may have income tax consequences for me, my farm

operation, or the Estate of the deceased person I am representing. … It is also my responsibility to pay any and all taxes that may be owed as a result of receiving an ARPA payment."). The FSA-2601 provided recipients with three options to choose from: Option 1 (accept the contractual offer), Option 2 (continue negotiations—discuss the offer further before making a decision), and Option 3 (irrevocably decline the contractual offer).

- **OPTION 1.** I accept the ARPA payment as calculated by FSA for my eligible direct loan debt or, in the case of an Estate or deceased person, for the debt owed by the Estate or deceased person I represent. Please apply the payment to my FSA eligible direct loan debt or, in the case of an Estate or deceased person, to the eligible direct loan debt owed by the Estate or deceased person I represent, and pay the 20 percent portion to assist with tax liability using the bank account(s) information I provided below.

- **OPTION 2.** Before I make a decision, I want to schedule a meeting with the local FSA office to discuss this notice (for example, if I disagree with the calculation, if an error is identified, or if I disagree with the payment distribution) or provide updated information that may affect the payment distribution.

- **OPTION 3.** I do not want to receive the ARPA payment. I understand and acknowledge that my decision to not accept the ARPA payment is final and I understand and acknowledge that FSA will continue to service the debt according to FSA regulations and the Debt Collection Improvement Act of 1996 (DCIA) requirements.

Appx021-22, ¶¶ 37-40, Appx043-45, Appx059-61, Appx064-66.

As reflected in public and private statements made by Secretary Vilsack and other Government employees before and after ARPA's enactment, the Government designed the FSA-2601s to induce SDFs to select Option 1 so that they would quick

debt relief in the amounts calculated by the Government, and maintain or expand their farming operations to support the Government's pandemic response and recovery efforts. Appx021-22, ¶¶ 38, 41-42. Plaintiffs, and the putative class they seek to represent, selected Option 1 and accepted the USDA's offer. Appx024, ¶ 51, Appx028-29, ¶ 81-82. Plaintiff Bonner's FSA-2601 listed his "Calculated ARPA Payment" as $24,749.33. Appx024, ¶ 53. Plaintiff Williams' FSA-2601 listed her calculated payment as $373,154.18. Appx025, ¶ 56.

After returning their executed FSA-2601s, both Plaintiffs made various farm-related expenditures in reliance on the Government's contractual guarantees, including purchasing additional equipment and land to maintain or expand their operations, which in turn strengthened America's food supply chain in support of the Government's COVID-19 pandemic response efforts. Appx015, ¶ 6, Appx024-25, ¶¶ 52-57. Specifically, Plaintiff Bonner purchased a tractor, a hay baler, and two hay combines which he was under the impression he could afford once his promised payment came through. Appx025, ¶ 55. Plaintiff Williams' also invested heavily in her farm after returning her FSA-2601, including renting tree-planting machinery, buying and planting apple trees, and fixing the heating system in her farmhouse. Appx025, ¶ 57.

However, in a devastating turn of events, the Government breached its contractual promises and failed to pay the eligible debt of those SDFs who accepted

the Government's contractual offer by choosing Option 1 on their FSA-2601s. Appx015-16, ¶¶ 7-8. On August 16, 2022, President Biden signed the Inflation Reduction Act of 2022 into law, repealing § 1005 of ARPA, and causing further financial injury to SDFs. Appx016, ¶ 8, Appx025-26, ¶¶ 58-62. In repealing § 1005, the Government made clear that it intended to break the contractual commitments it had made to Plaintiffs and other eligible SDFs regarding the contractual promises outlined in the FSA-2601s. Appx025, ¶ 59.

Plaintiffs and other SDFs have suffered financial damage as a result of the Government's breach of contract. In reliance on the Government's promise to pay their debt, Plaintiffs and other SDFs made purchases they are now, without the promised payments, unable to afford. Appx016, ¶ 8, Appx025-26, ¶¶ 55-57, 60-62. After § 1005 of ARPA was repealed, Mr. Bonner, who lives paycheck to paycheck, and purchased additional farm equipment based on the Government's broken promises, has had trouble affording basic farming necessities, and cannot afford to run his expanded farming operation. Appx025, ¶ 55, Appx026, ¶ 61. Ms. Williams, who also expanded her farming operations and repaired her home in reliance on the Government's broken promises, now cannot afford to pay her mounting bills and fears that she and her children will lose their farm. Appx025, ¶ 56, Appx026, ¶ 62.

### B. PROCEDURAL BACKGROUND

On October 7, 2022, amid mounting debts they would not have taken on absent ARPA, Plaintiffs filed a Complaint against the Government in the U.S. District Court of Federal Claims. Appx012, Dkt. 1. The Government filed a Motion to Dismiss pursuant to Rule 12(b)(6) on March 10, 2023. Appx012, Dkt. 14. Plaintiffs responded to the Government's motion to dismiss on April 7, 2023. Appx012, Dkt. 15. The Government requested an extension of time through May 19, 2023, to file its reply, which the court granted on April 11, 2023. Appx012, Dkt. 16, 17. On April 27, 2023, more than three weeks before the Government's reply was due, the District Court issued an Opinion and Order granting the Government's Motion to Dismiss in its entirety. Appx013, Dkt. 18. The District Court entered a Judgment in favor of the Government on April 28, 2023. Appx013, Dkt. 21. Plaintiffs filed a Notice of Appeal of the District Court's dismissal of their Complaint and entry of a Judgment on June 21, 2023. Appx013, Dkt. 22.

## SUMMARY OF ARGUMENT

Congress passed ARPA to stimulate the U.S. economy and assist in the country's recovery from the impacts of the COVID-19 pandemic, with billions of dollars appropriated towards strengthening the U.S. farming system. One particular group Congress sought to assist are SDFs, who have historically experienced intentional and race-based barriers in obtaining the financial assistance necessary to

start farms and maintain them. Section 1005 of ARPA directed that the Secretary of Agriculture "shall provide a payment in an amount up to 120 percent of the outstanding indebtedness" of each eligible SDF, held "as of January 1, 2021," arising from "direct farm loan[s] made by the Secretary" and "farm loans guaranteed by the Secretary." Pub. L. No. 117-2, § 1005. The Government chose to implement this directive through the use of Form FSA-2601, a contractual offer sent to eligible SDFs, which they were asked to return with Option 1 checked to accept the offer. Despite being bound by its contractual promises to pay off the FSA loans of Plaintiffs and other SDFs who accepted the Government's offer, the Government broke those promises, and breached its contracts with Plaintiffs by repealing § 1005 of ARPA. The Government did so in an effort to unilaterally erase its contractual obligations. Rather than helping to address the long-standing, discriminatory conduct faced by SDFs, the Government added to it.

Plaintiffs sued, alleging claims for breach of express contractand breach of implied contract. The Government moved to dismiss Plaintiffs' claims, arguing that they failed to plead any of the necessary elements of contract formation, and the district court agreed. Both are wrong.

The four basic elements of a binding contract with the Government are: (1) mutuality of intent to contract; (2) consideration; (3) lack of ambiguity in offer and

acceptance; and (4) actual authority to bind the government in contract. Plaintiffs plausibly alleged and support each element in their Complaint.

Mutuality of intent is clearly demonstrated through the plain language of the FSA-2601 offer letters, as well as the Government's own public notices, and internal memoranda regarding implementation of § 1005 of ARPA, and the existence and nature of the mutual promises in the FSA-2601s.

Plaintiffs pleaded several types of consideration—a bargained-for performance or return promise. By choosing Option 1 on the FSA-2601 and accepting the offer amount and conditions therein, Plaintiffs impliedly waived their right to appeal whether the calculated payment amount was correct; and, among other conditions, expressly agreed it was their "responsibility to pay any and all taxes that may be owed as a result of receiving an ARPA payment." Choosing Option 1 on the FSA-2601, rather than challenging the calculations before making a final decision, also provide consideration by assisting the Government in its goal of making swift payments to SDFs as part of "maintain[ing] and expand[ing] their farming operation to support the Government's pandemic response and recovery efforts."

The Government made an unambiguous offer, which Plaintiffs and many other eligible SDFs unambiguously accepted. The FSA-2601 offer letters, public notices, and internal memoranda all demonstrate that the parties reached a deal.

Finally, Plaintiffs pleaded that the Secretary of Agriculture and the FSA had actual authority to bind the Government in contract. This authority is clearly shown by § 1005's broad authorization provision, which contains no limitations on how the Secretary of Agriculture may effectuate Congress's mandate that he "shall provide a payment" to Plaintiffs, and other eligible SDFs.

Because Plaintiffs have established all of the elements of contract formation with the Government, the district court's Opinion and Order dismissing Counts I and II of the Complaint should be reversed, and the Judgement entered by the district court should be vacated.

## STANDARD OF REVIEW

The sole question in this appeal is whether Plaintiffs' Complaint was "sufficient to cross the federal court's threshold" at the pleading stage. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Crossing that threshold "generally requires only a plausible 'short and plain' statement of the plaintiff's claim." *Id.* A plaintiff's claims are facially plausible, and survive an RCFC 12(b)(6) motion to dismiss, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Moore v. United States*, 157 Fed. Cl. 747, 749 (2022), *rev'd on other grounds* 66 F. 4th 991 (Fed. Cir. 2023) (citation and quotation omitted); *see also*, *Chevron U.S.A. Inc. v. U.S.*, 155 Fed. Cl. 344, 349 (2021) (same).

This Court reviews *de novo* whether a district court properly dismissed a complaint for failure to state a claim under Rule 12(b)(6). *Dehne v. U.S.*, 970 F.2d 890, 892 (Fed. Cir. 1992). In reviewing such a dismissal, the Court "must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant." *Gould, Inc. v. U.S.*, 935 F.2d 1271, 1274 (Fed. Cir. 1991); *see also*, *Mississippi Cnty. v. United States*, 130 Fed. Cl. 772, 773 (2017) (on a motion to dismiss, the court must view the complaint in the 'light most favorable to the plaintiff."). Additionally, the Court owes no deference to the district court's statutory interpretation. *Samish Indian Nation v. U.S.*, 419 F.3d 1355, 1364 (Fed. Cir. 2005).

## ARGUMENT

### A. The District Court Erred In Dismissing Counts I and II of the Complaint for Failure to State a Claim.

The district court erroneously dismissed Counts I and II of Plaintiffs' Complaint because it believed that Plaintiffs did not allege well-pleaded facts establishing *any* of the four elements of contract formation with the United States. Appx003-007. So certain was the district court of the correctness of its reasoning that it took the highly-unusual step of issuing its opinion and order weeks before the Government's deadline to file a reply brief. Appx012, Dkt. 17 (granting extension of time through May 19, 2023 for the Government to file its reply), Appx013, Dkt. 18 (April 27, 2023 Opinion explaining "The Court finds it unnecessary for the

Government to file its Reply."). As the court concluded that there was no contract, it did not reach the issue of breach. Appx007.

The district court's ruling was erroneous as a matter of law and merits reversal. The Government and eligible SDFs, like Plaintiffs, had enforceable promises, created by a contract contained in the FSA-2601 offer letters, and Plaintiffs' acceptance by selecting Option 1. The district court's myopic focus on § 1005 of ARPA overlooks the actual contracts. As is set forth in further detail below, the Complaint easily surpassed the requisite facial plausibility threshold at the pleading stage, as it included non-conclusory allegations, supported by specific facts, establishing each core element of a binding contract with the Government. *Moore*, 157 Fed. Cl. at 749.

#### 1. Plaintiffs Pleaded All of the Elements of a Binding Contract With The Government.

To sufficiently plead the existence of a binding express or an implied contract with the Government, Plaintiffs need to show (1) mutuality of intent to contract; (2) consideration; (3) lack of ambiguity in offer and acceptance; and (4) that "the government representative whose conduct is relied upon must have actual authority to bind the government in contract." *D & N v. U.S.*, 331 F.3d 1374, 1378 (Fed. Cir. 2003). Each of these elements was adequately pleaded in the Complaint.

#### a) Plaintiffs Plausibly Pleaded Mutuality of Intent to Contract

Mutuality of intent is shown by pleading, with "objective evidence, the existence of an offer and a reciprocal acceptance." *Am. Bankers Ass'n v. U.S.*, 932 F. 3d 1375, 1381-82 (Fed. Cir. 2019) (citation omitted). Here, Plaintiffs have unusually strong evidence of mutuality in FSA Form 2601, the form "offer letter" the Government sent to all eligible SDFs pursuant to the mandate to Secretary Vilsack that he "shall provide a payment in an amount up to 120 percent of the outstanding indebtedness" of each eligible SDF's FSA loans, held "as of January 1, 2021." *See* Appx020, ¶ 32, Appx021-23, ¶¶ 35-43, Appx024-26, ¶¶ 51-62, Appx035-36, ¶ 99. The purpose of FSA Form 2601, as is made clear by the language therein, was to present vetted and indebted borrowers who qualified for relief under § 1005 of ARPA with an opportunity to accept the payment amount calculated and proposed by the FSA, in exchange for waiving their existing appeal rights, and agreeing that they were responsible for any resulting tax liability—meaning that they agreed that some portion of the amounts the Government paid them would go right back into the Government's coffers in the form of taxes owed. Appx021-22, ¶¶ 35-41, Appx043-44, Appx059-60, Appx064-65.

The FSA-2601 begins by notifying recipients that, "FSA records show that you had a direct loan…and that you are eligible for payment under the [ARPA]." Appx043, Appx059, Appx064. Included in each Form was an attached worksheet

with "detailed calculations for [the recipient's] eligible direct loan debt." Appx043, Appx059, Appx064. Crucially, after orienting recipients as to the purpose of the letter, the Form directed recipients to "select one of…three options." Appx043, Appx059, Appx064, *see also* Appx021, ¶ 37. By marking the checkbox next to Option 1, recipients agreed to "accept the ARPA payment as calculated by FSA." Appx021, ¶ 38, Appx043, Appx059, Appx064.

Plaintiffs checked Option 1, manifesting their assent to the Government's contractual offer and "binding themselves and the [] Government in contract." Appx024, ¶¶ 51-54. Option 1 proved to be a false promise, however. With the eventual repeal of § 1005, Plaintiffs would learn that they would not receive the benefit for which they had bargained. Appx025, ¶ 59-60.

The Government fully understood that the FSA-2601 contained a contractual offer that could only be accepted as is. At the time ARPA was enacted, the Government issued a Notice of Funds Availability; American Rescue Plan Act of 2021 Section 1005 Loan Payments (ARPA) ("Notice of Funds Availability") in the Federal Register, which explained "The offer notice will be sent to the primary borrower and eligible recipient(s) and will provide three options: (1) Accept the offer and conditions; (2) Schedule a meeting to discuss with FSA before making a decision (for example to discuss the loan calculation, if an error is identified); or (3)

Decline the offer." 86 Fed. Reg. 28,329 (May 26, 2021).[2] Several months later, the USDA circulated Notice FSFL-178 (the "FSFL Notice") to its state and county offices to "provide general information … on implementation plans for Section 1004 of ARPA."[3] Appx023, ¶ 44, FSFL Notice, p. 1. Under a section titled "**Notification to Borrower and Agreement**," the FSFL Notice explained that FSA-2601 would "serve as [USDA's] **offer letter**" under § 1005 and "be used to notify known [SDF] borrowers of the ARPA offer amount," and that SDFs would "use FSA-2601 to do one of the following": "accept the offer and conditions," "schedule a meeting to discuss with FSA before making a decision," or "decline the offer." Appx023, ¶¶ 45-46 (emphasis in original). *See also*, FSFL Notice, p. 4 ("FSA-2601, Notification of FSA's Decision – American Rescue Plan Act of 2021 (ARPA) will serve as the offer letter and be used to notify known SDA FSFL borrowers of the ARPA offer amount.").

---

[2] The Notice of Funds Availability is publicly available at https://www.federalregister.gov/documents/2021/05/26/2021-11155/notice-of-funds-availability-american-rescue-plan-act-of-2021-section-1005-loan-payment-arpa (last visited September 28, 2023).The Court may take judicial notice of the Notice of Funds Availability, and later cited FSFL Notice and other entries in the Federal Register, because each one is a "government record published in a reliable source." *Akanthos Opportunity Master Fund, L.P. v. U.S.* 148 Fed. Cl. 647, 660, n.7 (2020) (taking judicial notice of document published in the Federal Register). Plaintiffs also referred to the Notice of Funds Availability in the Complaint. Appx012, ¶2, n.1, Appx023-24, ¶ 49.

[3] The FSFL Notice is publicly available at www.fsa.usda.gov/Internet/FSA_Notice/fsfl_178.pdf (last visited September 27, 2023).

Any changes to the offer in a given FSA-2601, required issuing a new contract in the form of a new offer letter. *See* FSFL Notice, p. 6 ("If the offer letter is incorrect, the borrower may contact the County Office as described in the offer letter to request a meeting with an FSA employee to discuss the payment calculations or other factors prior to acceptance of the offer. If corrections are needed, a new offer letter will be provided by the National Office only. If disagreement still remains, the FSFL borrower will be provided with appeal options.").

The district court's conclusion that FSA-2601 was not an offer, but a "notice of program eligibility and the means by which SDFs could certify their eligibility and request financial assistance under ARPA § 1005," Appx005, is not supported by the record. The only authority cited directly by the district court on this particular element of contract formation was *XP Vehicles, Inc. v. U.S.*, 121 Fed. Cl. 770, 785 (2015) (quoting *Girling Health Sys., Inc. v. United States*, 22 Cl. Ct. 66, 71-72 (1990)), for the proposition that "[i]t is well recognized that 'mere solicitations, invitations[,] or instructions from the [g]overnment are not offers to contract that bind the [g]overnment upon [a] plaintiff's completion of a form, even when the solicitations, invitations or instructions are embodied in a statute or regulation.'" *Id.*, Appx004. Plaintiffs agree with this well-established principle, but *XP Vehicles* has no bearing what occurred here, as that case concerned "an agency's invitation to the public to apply for a loan." *XP Vehicles*, 121 Fed. Cl. at 785.

In *XP Vehicles*, two manufacturers applied for guaranteed loans as part of a Department of Energy program, codified at 42 U.S.C. § 17013. After their applications were rejected, they sued the Government, asserting, *inter alia*, that the Government was obligated by statute to fund qualified applications and that an implied-in-fact contract had been created by the Government's act of soliciting applications. *Id.* at 785. With good reason, the court rejected the plaintiff's argument, concluding that that "there is nothing inherent in an agency's invitation to the public to apply for a loan that constitutes an offer to contract, or that forms the basis for a contract once an application is submitted, even if the application criteria are ostensibly met." *Id.* The situation here, however, is entirely different.

Unlike the statute discussed in *XP Vehicles*, the FSA-2601 is not a loan application or an invitation to *apply* for anything. The word "application" does not appear anywhere in the FSA-2601s. *See* Appx043-68. Nor, for that matter, does it appear anywhere in the text of § 1005, the provision of ARPA authorizing the USDA to provide repayment of eligible SDFs' FSA loans, which is quoted in full below:

> **SEC. 1005. FARM LOAN ASSISTANCE FOR SOCIALLY DISADVANTAGED FARMERS AND RANCHERS.**
> (a) PAYMENTS.— (1) APPROPRIATION.—In addition to amounts otherwise available, there is appropriated to the Secretary for fiscal year 2021, out of amounts in the Treasury not otherwise appropriated, such sums as may be necessary, to remain available until expended, for the cost of loan modifications and payments under this section.
> (2) PAYMENTS.—The Secretary shall provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021, to pay off the loan directly or to the

> socially disadvantaged farmer or rancher (or a combination of both), on each— (A) direct farm loan made by the Secretary to the socially disadvantaged farmer or rancher; and (B) farm loan guaranteed by the Secretary the borrower of which is the socially disadvantaged farmer or rancher.

Pub. L. No. 117-2, § 1005.

This was not the case in *XP Vehicles*. There, the statute creating the loan program that rejected the plaintiffs included a provision establishing specific application requirements. *See* 42 U.S.C. § 17013. Nothing in the text of § 1005 indicates that this is a "mere solicitation" or a public call for applications of the type critiqued by the Court in *XP Vehicles.* Here, the Government assumed the burden of determining eligibility under § 1005 and calculating a payout: *no application is necessary*. *See*, Appx015, ¶ 4, Appx021, ¶ 36, Appx043, Appx059, Appx064.

Further clarification of this arrangement is provided in the Notice of Funds Availability published in the Federal Register regarding the USDA's implementation of section 1005. *See* 86 Fed. Reg. 28,329 (May 26, 2021). The section of the Notice of Funds Availability titled "Initial Notification Process," makes clear that "Eligible recipients do not need to take *any action* until receipt of a payment offer from FSA." *Id.* (Emphasis added). In other words, no application is necessary. If you qualify for debt relief, the Government will find you and let you know by sending you an FSA-2601 offer letter. Appx015, ¶ 4, Appx021, ¶ 36, Appx043, Appx059, Appx064.

The FSA-2601s, and related explanatory notices, are strong evidence of mutuality of intent. The FSA-2601s are plainly designed to present eligible individuals—who a government agency has already determined qualifies for debt relief—with the offer of a pre-calculated loan repayment amount, and to obtain a response which will come in the form of an acceptance of the offer, a denial of the offer, or a request to meet and discuss the issue further. The existence of this instrument, and the fact that Plaintiffs received it, reviewed it, and indicated their assent to its terms by checking Option 1, sufficiently establishes the mutuality of intent element. Appx021-22, ¶¶ 35-41, Appx035, ¶ 99(a), Appx043-44, Appx059-60, Appx064-65.

**b) Plaintiffs Have Plausibly Pleaded Consideration**

The second required element for contract formation is consideration. Consideration requires nothing more than "a performance or a return promise" that must be bargained for. *Steinberg v. U.S.*, 90 Fed. Cl. 435, 444 (2009). As the Court of Federal Claims recently noted in *Am. Ground Transp., Inc. v. U.S.*, 165 Fed. Cl. 659, 666 (2023), "[i]f bargained for, a mere peppercorn qualifies [as consideration]." Here, the parties bargained for far more than a mere peppercorn—"[C]onsideration supported both sides of the parties' contracts. The [] Government offered debt relief and, in return, [Plaintiffs] waived their right to challenge or appeal the []

Government's calculation of the amount of debt relief for which they were eligible." Appx035-36, ¶ 99(c).

By checking Option 1 on their FSA-2601s, Plaintiffs implicitly agreed to waive their right to challenge the Government's loan calculation. This is made clear from the language and structure of the Form. Option 1 states "I **accept the ARPA payment as calculated by FSA** for my FSA debt." Appx043, Appx059, Appx064 (emphasis added). Option 2, however, reads: "Before I make a decision, I want to schedule a meeting with the local FSA office to discuss this notice…or provide updated information that may affect the payment distribution" Appx044-45, Appx061, Appx066. Thus, in contrast to Option 1, which communicated finality, Option 2 provided recipients with a mechanism to delay their decision along with a forum to contest the Government's calculations.

By electing Option 1, and "accepting the payment as calculated by the FSA," Plaintiffs waived their right to appeal the calculation, and surrendered the opportunity—provided by Option 2—to gather evidence and mount a challenge to the Government's calculations. Relinquishing a right to mount a challenge is a forbearance that qualifies as valid consideration. *See Am. Ground Transp., Inc.* 165 Fed. Cl. at 666 ("consideration only requires the loss of a legal right or the gain of a legal burden: not any specific quantity."); *see also Rd. & Highway Builders, LLC v. U.S.*, 702 F.3d 1365, 1368 (Fed. Cir. 2012) ("Forbearance of a right can represent

consideration to support an agreement.”; *Northrup Grumman Corp. v. U.S.*, 46 Fed. Cl. 622, 625 (2000) (a “decision to forbear bringing a meritorious claim” may “create valid consideration”); *Goltra v. United States*, 119 Ct. Cl. 217, 255 (1951) (“it is elementary that the giving up of a legal right, even a tenuous cause of action, is good consideration for a bargain.”).

As further consideration, Plaintiffs also agreed it was their “responsibility to pay any and all taxes that may be owed as a result of receiving an ARPA payment.” Appx044, Appx060, Appx065. Although the calculated repayment amount in each FSA-2601 included funds to “**assist with** tax liability,” the Government did not offer to pay any resulting tax liability in full. Appx043, Appx059, Appx64 (emphasis added). *See also* FSFL Notice, p. 1 (“Payments are intended to pay-off the eligible borrower’s outstanding FSFL as of January 1, 2021, with the remaining funds being used to **offset tax liabilities** incurred by the payment.”) (emphasis added). Instead, as a condition of receiving payment from the Government, Plaintiffs had to agree that “[i]t is also my responsibility to pay any and all taxes that may be owed as a result of receiving an ARPA payment.” Appx044, Appx060, Appx065. In other words, in exchange for the promised loan payoff, Plaintiffs had to agree that some portion of the amounts the Government paid them would go right back into the Government’s coffers in the form of taxes owed to the Government by Plaintiffs by virtue of the FSA loan payouts.

The Notice of Funds Availability further clarified that Plaintiffs and the putative class agreed to provide this additional form of consideration:

> The borrowers have 60 days to return FSA–2601 to accept the payment calculations and request payment; self-certify racial and/or ethnic eligibility; acknowledge that ARPA is subject to public disclosure; **acknowledge probable tax liability**; assign payment to FSA for the amount of the ARPA eligible debt as of January 1, 2021. The balance sent to the borrower to allow to schedule a meeting to discuss with FSA before making a decision; or decline ARPA.

86 Fed. Reg. 28,329 (May 26, 2021) (emphasis added). The assumption of this tax burden is an additional form of valid consideration which sealed Plaintiffs' deal with the Government. *See Am. Ground Transp., Inc.* 165 Fed. Cl. at 666 ("the gain of a legal burden" can amount to valid consideration).

In the context of a contract with the government, consideration cannot flow in just one direction, it "must [also] render a benefit to the government." *Northrop Grumman Corp. v. U.S.*, 46 Fed. Cl. 622 (2000). Here, the Plaintiffs' acceptance of Option 1 in the FSA-2601 not only amounted to a forbearance from their perspective, but it also bestowed benefits upon the Government—accepting legal responsibility for payment of any tax liability resulting from the FSA loan repayments. Any taxes owed would be paid to, and so would be revenue to the Government. *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 728 (7th Cir. 2011) (describing taxes as "exactions designed to generate revenue.").

Further, this course of action allowed for swifter debt relief payments, and the faster that money got out the door, the faster the recipients could use those funds to assist the Government in its goal of "maintain[ing] and expand[ing] their farming operation to support the Government's pandemic response and recovery efforts." Appx022, ¶ 41. This Court has held that in the past that Government programs designed to encourage economic activity in strategic sectors bestow a benefit upon the Government amounting to valid consideration, even if those programs do not provide any "direct monetary value to the United States." *Quiman, S.A. de C.V. v. U.S.*, 178 F.3d 1313 (Table) (Fed. Cir. 1999).

**c) Lack of Ambiguity in Offer and Acceptance**

The third required element of contract formation is an unambiguous offer and acceptance. This element overlaps to a significant extent with the mutuality element. *Davis Wetlands Bank, LLC v. U.S.*, 114 Fed. Cl. 113, 121 (2013). As explained in *Frankel v. U.S.*, 118 Fed. Cl. 332, 335 (2014), an "offer" is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." (quoting Restatement (Second) of Contracts § 24). The FSA-2601, as already discussed at length in discussed in Section A.1 *supra*, clearly satisfies this definition.

There is nothing ambiguous about the FSA-2601 or what it seeks to accomplish. The Government was quite open about its intentions. To accomplish its

goal of "provid[ing] immediate financial relief from the COVID related economic crisis to approximately 24,000 FSA borrowers who are eligible," the FSA:

> is using the form FSA-2601, Notification of FSA's Decision-ARPA that includes the information to borrowers to accept, discuss with FSA before making a decision, or decline the financial assistance. The borrowers have 60 days to return FSA–2601 to accept the payment calculations and request payment; self-certify racial and/or ethnic eligibility; acknowledge that ARPA is subject to public disclosure; acknowledge probable tax liability; assign payment to FSA for the amount of the ARPA eligible debt as of January 1, 2021.

Department of Agriculture, Submission for OMB Review; Comment Request, October 19, 2021, 86 Fed. Reg. 58,859 (Oct. 25, 2021).

Once an offer is made, it is accepted by "manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Frankel*, 118 Fed. Cl. at 335. By checking Option 1, Plaintiffs manifested their assent to, and explicitly accepted the terms of the Government's offered debt relief payments. *See* Appx015, ¶ 6, Appx024, ¶ 51, Appx035, ¶ 99(c). The plain language of the FSA-2601 could hardly be clearer on this point. By checking Option 1, Plaintiffs agreed to "accept the ARPA payment as calculated by FSA for my eligible direct loan debt," and that it was their "responsibility to pay any and all taxes that may be owed as a result of receiving an ARPA payment." Appx021, ¶ 38, Appx043-44, Appx059-60, Appx064-65.

Despite what the Government may argue, this case does not represent some radical departure from a traditional contract. The FSA-2601, and the interaction it

facilitates, bears all the hallmarks of an offer and acceptance. The government made a binding promise to Plaintiffs, which Plaintiffs accepted, that the Government then tried to wiggle out of. It cannot now pretend that its promise was never enforceable.

What occurred in this case is similar to what was presented before the United States Claims Court in *Zoubi v. U.S.*, 25 Cl. Ct. 581 (1992). In *Zoubi*, a certified Arabic interpreter was sent a "memorandum" from the acting director of an academic program affiliated with the U.S. Customs Service offering the interpreter a full-time position at the program and notifying him of the flexible rate of pay he would receive should he accept the terms elaborated in the memorandum. *Id.* at 583-84. The memorandum concluded by instructing the interpreter to sign above a line that provided: "I acknowledge receipt of this notice and accept assignment." *Id.* Sometime later, after the interpreter had done as prompted and returned the signed memorandum, the director notified the interpreter that his services were not needed. Like the Plaintiffs in this case, the interpreter suddenly found himself on the wrong end of a broken promise with the Government, and filed a breach of contract action. *Id.*

The Government attempted to dispose of the suit, arguing, *inter alia*, that the interpreter could not establish the existence of a contract with the Government and that the memorandum was "a nullity." *Id.* at 586. The court rejected the Government's argument, determining that the memorandum possessed all the basic

elements of an enforceable contract. *Id.* Specifically, the memorandum contained the requisite manifestations of contractual intent as it "provided a limited guarantee of employment while conditioning employment on the acceptance of the terms in the memorandum." *Id.* Like the memorandum in *Zoubi*, the FSA-2601 was a limited guarantee, for a specific individual, with the Government's offer conditioned on the acceptance of certain specified terms, and which "invite[d] acceptance by signing and returning." *Id.*

Plaintiffs have met their burden of alleging a lack of ambiguity in the offer and acceptance of their contract with the Government.

#### d) The Government Authorized The Secretary To Provide Specific Debt Relief To Eligible SDFs Through Whatever Means The Secretary Chose To Use

The final required element for contract formation is authority to bind the government in contract. *D & N*, 331 F.3d at 1378. Plaintiffs have adequately pleaded this element as well. *See* Appx036, ¶ 99(d).

In its order, the district court concluded that Plaintiffs failed to establish this element because § 1005 of ARPA did not *expressly* confer any contracting authority to the Secretary of Agriculture or its agents. Appx006-07. The court observed that because specific contracting authority *was* included in many other sections of ARPA, but not in § 1005, then that must mean that Congress did not intend to grant contractual authority to USDA and its agents who sent out the FSA form. Appx006-

07. In support of this argument, the court cited *Maine Cmty. Health Options v. U.S.*, 140 S. Ct. 1308, 1323 (2020), where the United States Supreme Court reiterated the well-established principle that when Congress includes particular language in one section of a statute but omits it in another, that omission creates a presumption that Congress intended a difference in meaning. This principle, however, derives from the more general proposition that, in analyzing the text of a statute, courts "must give effect, if possible, to every clause and word." *Laughrin v. U.S*, 573 U.S. 351, 358 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)). Taken to its logical conclusion, this canon of construction actually supports a reading of section § 1005 that impliedly grants the USDA the power to contract.

The plain language of § 1005 mandates that the Secretary of Agriculture "**shall** provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021." (Emphasis added). This broad authorization provision contains no limitations on how the Secretary of Agriculture may effectuate that mandate. Here, the Secretary chose to fulfill § 1005's mandate through contractual offers sent to eligible SDFs, with payment conditioned on their acceptance of the offer, and its attendant conditions. Appx015-16, ¶¶ 3-8, Appx020-24, ¶¶ 30-50, Appx043-068.

The sections of ARPA that the district court presented as expressly conferring contracting authority are also distinguishable. Appx007. Section 2703(b) mentions

awarding contracts in a section titled "Use of Funding," which circumscribes the manner in which the Secretary can use appropriated funds. Pub. L. No. 117-2, § 2703(b), 135 Stat. 47.[4] Section 1005 contains no such limitation on the Secretary's authority, merely saying the Secretary "shall provide a payment." *Id.*, § 1005, 135 Stat. 12-13. Section 9815 modifies the "Medical assistance percentage" for medical services assistance expenditures received through Urban Indian Organizations that already have contracts with the Government, but says nothing one way or the other about authority to enter into contracts. *Id.*, § 9815, 135 Stat. 215-16. Section 3301(b) mentions "contracting with third parties" as an example of one way the Minority Business Development Agency (MBDA) "may use such amounts in a manner the Agency determines appropriate, including through contracting with third parties, to provide technical assistance to business enterprises owned and controlled by socially and economically disadvantaged individuals," leaving the full panoply of ways the MBDA uses the allocated amounts to its discretion, as Congress did in § 1005. *Id.*, § 3301(b), 135 Stat. 69-72. Section 6003(a) allocates funds "to carry out the provisions of the Fish and Wildlife Act of 1956 … and the Fish and Wildlife Coordination Act," in several ways, including "through direct expenditure, contracts, and grants," but Section 6003(b) also appropriates funds with no

---

[4] The full text of ARPA is available at https://www.congress.gov/117/plaws/publ2/PLAW-117publ2.pdf (last visited September 28, 2023).

restrictions on how they are used to "to carry out the provisions of section 42(a) of title 18, United States Code, and the Lacey Act Amendments of 1981." *Id.*, §§ 6003(a)-(b), 135 Stat. 94. Section 9401 includes the word "contracts" in the title, but does not mention contracts or contracting in the actual text of the section. *Id.*, § 9401, 135 Stat. 127.

It is well established that a government officer's actual authority to contract may be either express or implied. *Local Initiative Health Authority for L.A. County v. U.S.* ("*Local Initiative Health*"), 142 Fed. Cl. 1, 18 (2019). In *Local Initiative Health*, the Court of Federal Claims held that the Health and Human Services Secretary's authority to contract derived from two statutes that provided that the Secretary "shall establish" a program and "shall make" payments through the program. *Id*. The power to contract, while not expressly elaborated in the statute, was nonetheless implied, as it was "integral to the Secretary's duties" under the statutory framework. *Id. See also H. Landau & Co. v. U.S.*, 886 F.2d 322, 324 (1989) (Fed. Cir. 1989), *as amended on reh'g* (Dec. 11, 1989) ("Authority to bind the [g]overnment is generally implied when such authority is considered to be an integral part of the duties assigned to a [g]overnment employee") (internal quotation marks and citation omitted). The same is true in this case.

Under the framework elaborated in § 1005 of ARPA, the authority to contract is integral to the duty the Secretary of Agriculture is tasked with under the statute.

The Secretary exercised that legitimate authority by delegating it to the FSA, as was his prerogative. 86 Fed. Reg. 28,329 ( "Section 1005 of [ARPA] *provides funding and authorization* for FSA to pay up to 120 percent of direct and guaranteed loan outstanding balances…for certain loans of socially disadvantaged farmers and ranchers.") (emphasis added). Accordingly, Plaintiffs have plausibly pleaded that Secretary Vilsack and the FSA had actual authority to bind the Government in contract with Plaintiffs, which they did through issuing and accepting Plaintiffs' and other eligible SDFs' FSA-2601s. *See Cebe Farms v. U.S.* 103 Fed. Cl. 174, 183 (2012) (finding that plaintiffs adequately alleged "that their agreement with the USDA was entered into with authorized agents of the government who had actual authority to bind the United States"); *Humlen v. United States*, 49 Fed. Cl. 497, 503 (2001) ("[i]mplied actual authority, like express actual authority, also can bind the Government for the acts of its agents.").

## CONCLUSION

For the foregoing reasons, this Court should reverse the decision of the Court of Federal Claims dismissing Counts I and II of Plaintiffs' Complaint, vacate the Judgment entered by the Court of Federal Claims, and remand this case for further proceedings.

Dated: September 29, 2023

Respectfully submitted,

s/ *Nada Djordjevic*
Nada Djordjevic
Adam J. Levitt
**DiCello Levitt LLP**
10 N. Dearborn St., Sixth Floor
Chicago, Illinois 60602
Tel: (312) 214-7900
*alevitt@dicellolevitt.com*
*ndjordjevic@dicellolevitt.com*

*Counsel for Plaintiffs-Appellants Lester Bonner and Princess Williams*

# ADDENDUM

# TABLE OF CONTENTS

April 27, 2023 Opinion and Order……………………………………Appx001-009

April 28, 2023 Judgment………………………………………………..Appx010

# In the United States Court of Federal Claims

No. 22-1473C
(Filed: April 27, 2023)

| | |
|---|---|
| **JOHN BOYD, JR., et al.,** | |
| Plaintiffs, | |
| v. | |
| **THE UNITED STATES,** | |
| Defendant. | |

## OPINION AND ORDER

Plaintiffs, John Boyd, Jr., Kara Boyd, Lester Bonner, and Princess Williams individually and on behalf of a class of socially disadvantaged farmers ("SDFs")[1] filed a complaint alleging breach of contract by the United States ("the Government") arising from the Inflation Reduction Act ("IRA"), Pub. L. No. 117-169. The Government now moves the Court, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), to dismiss the complaint for failure to state a claim upon which relief can be granted on the grounds that Plaintiffs' complaint fails to establish all of the essential elements of contract formation. Plaintiffs filed their Response to the Government's Motion to Dismiss on April 7, 2023. ECF No. 15. The Court finds it unnecessary for the Government to file its Reply.

For the reasons set forth below, the Government's Motion to Dismiss is hereby **GRANTED.**

### I. Background

This case pertains to two sections of the American Rescue Plan Act of 2021 ("ARPA"), Pub. L. No. 117-2, §§ 1005-1006, 135 Stat. 4, 12-14 (2021), and Executive actions by the Department of Agriculture's ("USDA") Farm Service Agency ("FSA"). ARPA § 1005 directed the Secretary of Agriculture ("Secretary") to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher" as of January 1, 2021, on certain loans "made" or "guaranteed" by the Secretary ("FSA loans"). ARPA § 1005(a)(2); *see also* 7 U.S.C. §

[1] Plaintiffs' complaint states that this class is defined in §§ 1005–1006 of the American Rescue Plan Act ("ARPA"), Pub. L. No. 117-2.

2279(a)(5). To facilitate implementation of § 1005, USDA created form FSA-2601 to provide eligible SDFs with notice of an opportunity to "accept," "discuss," or decline "the ARPA payment" pursuant to ARPA § 1005. *See* Compl. ¶ 35; *see also* Compl. Ex. 1 at 1-3. SDFs had to return form FSA-2601 if they wished to certify their eligibility, accept FSA's benefit calculations, and request payment. *See* Compl. Ex. 1 at 1-3. The FSA-2601 states that the information requested on the form "will be used" by FSA "in order to process the customer's request for payment according to ARPA and applicable regulations," and that a "failure to furnish the requested information may result in a determination that FSA cannot process the customer's request for payment." Compl. Ex. 1 at 3.

ARPA § 1006 established a variety of programs and funding to address longstanding inequities for socially disadvantaged borrowers. Compl. ¶ 3. One of those programs directed the Secretary "to provide financial assistance" to certain SDFs who "suffered related adverse actions or past discrimination or bias in Department of Agriculture programs, as determined by the Secretary." ARPA § 1006(b)(5); Compl. ¶ 75. Congress appropriated not less than $50.5 million for this purpose. *Id.* § 1006(a), 1006(b)(5); Compl. ¶ 75.

Congress subsequently passed the Inflation Reduction Act of 2022 ("IRA"), which repealed ARPA § 1005 and amended ARPA § 1006. Pub. L. No. 117-169, §§ 22007-08, 136 Stat. 1818, 2021-23 (2022); *see* Compl. ¶ 58. Specifically, the IRA repealed ARPA § 1005, which authorized USDA to make payments to certain SDFs with FSA loans. Pub. L. No. 117-169, § 22008, 136 Stat. 1818, 2021-23 (2022). The IRA also deleted the references in ARPA § 1006(b)(5) to "socially disadvantaged" farmers and broadened § 1006(b)(5) program eligibility to all farmers, while increasing the program funding from $50.5 million to $2.2 billion. *Id.* § 22007.

The four named Plaintiffs in this putative class action allege that they are SDFs. Compl. ¶¶ 1, 19-22. Two of the four named plaintiffs, Ms. Williams and Mr. Bonner, allege that they submitted the FSA-2601 form requesting financial assistance payments pursuant to ARPA § 1005 and that submission of the form gave rise to an express or an implied-in-fact contract. Compl. ¶¶ 24-57, 97-108. They further allege in Counts I and II of the complaint that these purported contracts were breached when they did not receive any assistance payments and when Congress repealed ARPA § 1005 in the IRA. Compl. ¶¶ 58-62.

The remaining two Plaintiffs, Mr. and Mrs. Boyd ("the Boyds"), allege that they "lobbied" President Joseph Biden and Senator Cory Booker with an "offer" not to sue the Government on discrimination claims in exchange for enactment of ARPA § 1006, that Congress "accepted" this offer and entered into an implied-in-fact contract with them by enacting this section, and that Congress breached this purported "contract" by amending the section. Compl. ¶¶ 11-12, 63-80, 109-114.

## II. Standard of Review

To survive a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the complaint must have sufficient "facial plausibility" to "allow [] the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's factual allegations must "raise a right to relief above the speculative level" and cross "the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)

The Federal Circuit has reiterated that "[i]n ruling on a 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009); *see also Bank of Guam v. United States*, 578 F.3d 1318, 1326 (Fed. Cir. 2009), *cert. denied*, 561 U.S. 1006, 130 S. Ct. 3468, 177 L. Ed. 2d 1056 (2010). Courts, however, are "not bound to accept as true a legal conclusion couched as a factual allegation." *Acceptance Ins. Co. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

To satisfy its burden at the pleadings stage, a plaintiff asserting a breach of contract claim must allege well-pleaded facts that, if taken as true, would establish all four elements of contract formation: "(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States." *See*, *e.g.*, *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1381-82 (Fed. Cir. 2019) (quoting *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003)). A plaintiff asserting an implied-in-fact contract must establish the same elements as an express contract. *Id.* at 1381; *Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002).

## III. Discussion

### a. In Counts I and II of Plaintiffs' complaint, Plaintiffs fail to satisfy their burden to state a plausible claim for breach of contract.

In Counts I and II, Ms. Williams and Mr. Bonner allege that they submitted the FSA-2601 form requesting financial assistance payments under ARPA § 1005 and that submission of this form gave rise to an express or implied-in-fact contract. Compl. ¶¶ 24-57, 97-108. They further allege that these contracts were breached when they did not receive any assistance payments and when Congress repealed ARPA § 1005 in the IRA. Compl. ¶¶ 58-62.

The Government argues in its motion that Counts I and II of Plaintiffs' complaint should be dismissed because Plaintiffs' factual allegations do not state a plausible claim that they formed any contract with the United States. The Government further contends that Plaintiffs do not properly allege any of the essential elements of contract formation.

This Court agrees. Plaintiffs do not allege the existence of any unambiguous expression by government officials of an intent to enter into a contract with them as

program participants. *Am. Bankers*, 932 F.3d at 1381-82 (quoting *Anderson*, 344 F.3d at 1353) ("To satisfy its burden to prove such a mutuality of intent, a plaintiff must show, by objective evidence, the existence of an offer and a reciprocal acceptance."). Although Ms. Williams and Mr. Bonner allege that FSA officials entered into contracts with them as part of the statutory scheme under § 1005, the ARPA § 1005 program does not contain any language showing the Government's intent to contract. Instead, the program reflects Congress' intent only to "declare[] a policy to be pursued until the legislature shall ordain otherwise," not an intent "to create private contractual or vested rights." *Am. Bankers*, 932 F.3d at 1381 (quoting *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465-66 (1985)).

ARPA § 1005 directs the Secretary "to provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021, to pay off the loan directly or to the socially disadvantaged farmer or rancher (or a combination of both), on" FSA loans. Pub. L. No. 117-2, §§ 1005-1006, 135 Stat. 4, 12-14 (2021). The text of § 1005 does not have any requirement that SDFs provide anything in exchange for a payment by the Government. *See id.* Further, the statute has no mention of contracts to be negotiated or consideration to be exchanged in this financial assistance program. *See id*. Thus, Plaintiffs' complaint fails to show that the Government intended to create binding contractual obligations under ARPA § 1005. *See Am. Bankers*, 932 F.3d at 1382 (quoting *Nat'l R.R.*, 470 U.S. at 466-67) (When analyzing a statutory program for the Government's intent to contract, courts "will not infer a contractual undertaking 'absent "an adequate expression of an actual intent."'").

Plaintiffs further argue that the terms of the FSA-2601 form show the Government's intent to contract and the existence of a valid offer and acceptance, but this argument also fails.[2] Ms. Williams and Mr. Bonner allege that the FSA-2601 form is an "offer" from the Government which they accepted by signing and returning them to FSA. Compl. ¶¶ 4-6, 35-42. The FSA-2601 form states, however, that the SDF recipients were "eligible for payment" under ARPA § 1005, and the form "will be used" by FSA "in order to process the" SDF's "request for payment according to ARPA and applicable regulations." Compl. Ex. 1 at 3. Communications from the Government of this sort are not offers that form a binding contract upon filling in the blanks of a Government-prepared form. *See XP Vehicles, Inc. v. United States*, 121 Fed. Cl. 770, 787 (2015) (quoting *Girling Health Sys., Inc. v. United States*, 22 Cl. Ct. 66, 71-72 (1990)) ("It is well recognized that 'mere solicitations, invitations[,] or instructions from the [g]overnment are not offers to contract that bind the [g]overnment upon [a] plaintiff's completion of a form, even when the solicitations, invitations or instructions are embodied in a statute or regulation.'"); *Tree Farm Dev. Corp. v. United States*, 585 F.2d 493, 500 (Ct. Cl. 1978) (explaining that "invitations by the [g]overnment to file applications do not necessarily equal an operative offer, the acceptance of which will

[2] Plaintiffs offer the same allegations to support both mutuality of intent and the existence of an offer and acceptance.

Case 1:22-cv-01473-EJD Document 13 Filed 04/27/23 Page 5 of 9

result in a binding contract").[3] Rather, from the face of the document, it appears that the FSA-2601 form is a notice of program eligibility and the means by which SDFs could certify their eligibility and request financial assistance under ARPA § 1005. *See* Compl. Ex. 1 at 1 (describing the FSA-2601 form as an "informational notice," notifying the borrower that "FSA records show . . . that you are eligible for payment"); *see id.* (including an eligibility certification under the option to "accept the ARPA payment as calculated by FSA."). This is not an unambiguous offer to enter into a binding contract.[4]

In sum, the plain language of ARPA § 1005 and the FSA documents all show that the FSA-2601 form was part of FSA's administrative action to facilitate Congress' mandate to provide financial assistance to SDFs. Thus, contrary to Plaintiffs' allegations, the FSA-2601 form is not an unequivocal offer to form an express or implied contract.

Additionally, Plaintiffs' claims fail for lack of consideration. Ms. Williams and Mr. Bonner allege that the Government "induce[d]" SDFs to accept the Government's payment calculations as provided in the FSA-2601 forms and to "waive" their right to challenge the Government's calculations. Compl. ¶ 41. The FSA-2601 form, however, expressly provided SDFs with the option ("Option 2") to meet with FSA officials, either by phone or in person, to "disagree with the calculation," identify "an error," or "disagree with the payment distribution," without waiving any right to request payment. Compl. Ex. 1 at 3. SDFs also had options to "accept" FSA's payment calculations ("Option 1") or to decline to receive a payment altogether ("Option 3"). Compl. Ex. 1 at 1, 3. The SDFs were free to select any of the three options, and they did not provide any consideration to the agency regardless of their selection of option 1, 2 or 3. *See id.* Indeed, the FSA-2601 form does not include the word "waiver" or any other release

---

[3] Ms. Williams and Mr. Bonner also focus upon the terms "offer" and "acceptance" in FSA's Notice of Funds Availability published in the Federal Register, and they label these statements as an offer and acceptance of a contract. Compl. ¶¶ 43, 49; *Notice of Funds Availability; ARPA Section 1005*, 86 Fed. Reg. 28,329 (Dep't of Agriculture May 26, 2021). But to form a contract, there must be an unambiguous offer and acceptance, not merely a use of those terms. *See*, *e.g.*, *Am. Bankers*, 932 F.3d at 1382.

[4] Ms. Williams also alleges that she spoke to an unidentified "FSA representative" about "her FSA-2601," who "informed" her "that selecting Option 1 would lock her into the U.S. Government's payment calculation" and "that selecting Option 1 was in" her "best interests." Compl. ¶ 50. However, Ms. Williams does not allege that the "FSA representative" with whom she spoke ever made an offer or ever offered something different from what was set forth in the FSA-2601. *See id.* Rather, Plaintiffs admit that FSA representatives were "not authorized to create or modify the [FSA-2601] offer letter which includes the payment calculation worksheet." *Id.* ¶ 49. Accordingly, any oral statements made to Ms. Williams by an FSA representative cannot be construed as modifying the FSA-2601 form into an unambiguous offer to contract.

language.[5] *See id.* Thus, it is manifest from the face of the FSA-2601 form that the Government did not bargain for, or receive, any consideration from SDFs arising from or depending upon the option they selected on the FSA-2601 form.

Plaintiffs also argue that they provided consideration by accepting "the fastest and most efficient form of relief and maintained or expanded their farming operations, supporting the U.S. Government's pandemic response and recovery efforts." Compl. ¶ 99. This allegation of consideration, however, is not sufficient for several reasons. First, there is also no indication in ARPA § 1005 or the FSA-2601 form that option one (to "accept" FSA's payment calculations) is the "fastest and most efficient form of relief," nor do the documents state that the purpose of the FSA payment is to support "the U.S. Government's pandemic response and recovery efforts." *See generally*, Compl. Ex. 1 at 1-3; ARPA § 1005. In addition, Ms. Williams and Mr. Bonner do not allege that they promised to devote the § 1005 payment proceeds to maintaining or expanding their farming operations, and in any event such a promise was not a requirement to receive financial assistance under § 1005. Moreover, merely accepting payment from another party is not a mutual exchange of consideration. Thus, Plaintiffs did not sufficiently allege that they provided consideration in exchange for receiving a statutory payment in accordance with the eligibility criteria and calculation formula proscribed by Congress in ARPA § 1005.

Finally, Plaintiffs' complaint fails to allege well-pleaded facts showing that a government official had actual authority to contract with them. In the complaint, Ms. Williams and Mr. Bonner allege that the "U.S. Government representatives on whose conduct Relief Plaintiffs and the other Relief Class members relied had actual authority to bind the U.S. Government in contract stemming from § 1005 of ARPA." Compl. ¶ 99.

In this case, however, no official was conferred with contracting authority by ARPA § 1005. *See 6601 Dorchester Inv. Grp., LLC v. United States*, 154 Fed. Cl. 685, 692 (2021) (citations omitted) ("In order for a government representative to bind the United States in contract, he [or she] must have actual authority; apparent authority will not suffice to bind the government by acts of its agents."). ARPA § 1005 does not include any language authorizing USDA (or FSA) to enter into contracts on behalf of the United States as part of that "farm loan assistance" program. *See generally*, ARPA §

[5] Plaintiffs argue in their response that they waived their right to appeal or challenge the Government's calculation of their ARPA payment because selecting Option 1 required them to "accept the ARPA payment as calculated by FSA." Compl. Ex. 1 at 2. The FSA Form however does not indicate any waiver of a right to appeal. In fact, the form gives SDFs under Option 1 an option to appeal: "If at least one, but not all, required signatures are received within 60 days of the date of this notification, the socially disadvantaged borrowers who have not signed will be notified of their appeal rights. If an appeal is not requested with 30 days, FSA will process the payment as described in this notice." Compl. Ex. 1 at 2. Further, the form even provides Option 2 "to discuss" the notice with the local FSA office "before making a decision," thus allowing an SDF to discuss the notice and then select Option 1, if desired. Compl. Ex. 1 at 2.

1005. Given that Congress included specific contracting authority in many ARPA sections but omitted it from § 1005, Congress presumably "intended a difference in meaning" and did not intend for USDA (or FSA) officials to enter into contracts when making statutory payments under § 1005. *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1323 (2020) (quoting *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 777 (2018)); *see, e.g.*, ARPA §§ 2703(b), 9815, 9815, 3301(b) 5004(b)(1); 6003(a), 9401. The complaint fails to allege well-pleaded facts showing that a government official had actual authority to contract with them, and thus Counts I and II fail for this additional and independent reason.

Because Plaintiffs do not allege well-pleaded facts that, if taken as true, establish all four elements of contract formation, Plaintiffs fail to satisfy their burden to state a plausible claim for breach of contract. *See Twombly*, 550 U.S. at 570 (If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."). Accordingly, this Court **GRANTS** the Government's Motion to Dismiss Counts I and II.

**b. In Count III of Plaintiffs' complaint, Plaintiffs fail to satisfy their burden to state a plausible claim for breach of implied contract.**

In Count III of the complaint, the Boyds allege that they "lobbied" President Joseph Biden, Senator Cory Booker, and other unidentified "Government officials" with an "offer" not to sue the Government on discrimination claims in exchange for enactment of a provision in ARPA, "which directed USDA 'to provide financial assistance to socially disadvantaged farmers, ranchers, or forest landowners that are former farm loan borrowers that suffered related adverse actions or past discrimination or bias in [USDA] programs,' in an amount exceeding $50,000,000." Compl. ¶ 69-75 (quoting ARPA § 1006(b)(5)). Plaintiffs further allege that Congress "accepted" this offer and entered into an implied-in-fact contract with them by enacting this provision in ARPA § 1006(b)(5). *Id.* ¶ 75 (quoting ARPA § 1006(b)(5)). Finally, Plaintiffs allege that Congress breached this purported "contract" by amending ARPA § 1006, such that "relief is no longer set aside for SDFs," and now "relief is available for *any* "farmers, ranchers, or forest landowners determined to have experienced discrimination . . . in [USDA] farm lending programs." Compl. ¶¶ 77-78 (quoting IRA § 22007); *see also* Compl. ¶¶ 63-80, 109-114.

In its motion, the Government contends that Count III should be dismissed for failure to state a plausible claim for breach of an implied-in-fact contract. Further, the Government argues that these allegations do not establish mutuality of intent to contract, an unambiguous offer and acceptance, or consideration.

This Court agrees. First, Plaintiffs fail to show a mutuality of intent to contract. There is a presumption that Congress does not intend to bind itself contractually when passing a public law, and there is no clear indication that Congress intended to enter into an implied-in-fact contract with the Boyds by enacting ARPA § 1006. *See Am. Bankers*, 932 F.3d at 1381 (quoting *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465-66 (1985)) ("'[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create

private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'"). In order to "overcome the presumption, there must be a 'clear indication' that the legislature intended to create contractual rights enforceable against the government." *Id.* The text of the ARPA section at issue, however, does not contain any reference to a contract:

> The Secretary of Agriculture shall use . . . not less than 5 percent of the total amount of funding provided under subsection (a) [$1,010,000,000] to provide financial assistance to socially disadvantaged farmers, ranchers, or forest landowners that are former farm loan borrowers that suffered related adverse actions or past discrimination or bias in Department of Agriculture programs, as determined by the Secretary.

ARPA § 1006(b)(5). This provision of ARPA does not contain a "clear indication" that Congress intended to create enforceable contractual rights against the Government. *See Am. Bankers*, 932 F.3d at 1381 (quoting Nat'l R.R., 470 U.S. at 465-66).[6] Thus, Plaintiffs' allegations of their participation in the legislative process are not sufficient. *See Bay View, Inc. v. United States*, 278 F.3d 1259, 1266 (Fed. Cir. 2001). Accordingly, Plaintiffs fail to overcome the presumption that the enactment of ARPA § 1006(b)(5) did not create an implied-in-fact contract with them. *See Am. Bankers*, 932 F.3d at 1381.

The Boyds' claim also fails for lack of an unambiguous offer and acceptance. The complaint alleges the Boyds "communicated that, if the U.S. Government provided relief in ARPA for SDFs who had suffered USDA discrimination in the past, then they would not pursue such relief via litigation." Compl. ¶ 72. Plaintiffs further allege that "[t]he Boyds made this offer clear in their conversations with government officials, including Senator Cory Booker and President Biden." *Id.* ¶ 73. Finally, Plaintiffs allege in the complaint that the Boyds "did not litigate meritorious discrimination claims they could have brought against the U.S. Government" in "reliance" on ARPA § 1006. *Id.* ¶ 76.

The Boyds' purported offer is vague and nonspecific. Plaintiffs do not allege the particular claims that they chose not to litigate against the Government, or that their offer included a guarantee that they would receive any amount of compensation within any particular amount of time. In the absence of such facts, Plaintiffs alleged offer is not sufficient to satisfy the requirements of an offer. *See Petrini v. United States*, 19 Cl. Ct. 41, 45 (1989) ("Lack of ambiguity in offer and acceptance must be established if a contract is to exist.").

The allegation that Congress accepted a contract through the enactment of § 1006(b)(5) is similarly ambiguous. Plaintiffs do not allege that Congress knew about their purported offer, and the ARPA section at issue does not refer to the Boyds or any

---

[6] The legislative text similarly does not refer to any contractual undertakings by SDFs or refer to a mutual exchange of consideration with SDFs as a precondition for receiving this "financial assistance." *See* ARPA § 1006(b)(5).

Case 1:22-cv-01473-EJD Document 18 Filed 04/27/23 Page 9 of 9

purported offer. *See* ARPA § 1006(b)(5). Moreover, the ARPA section at issue did not specify any amount of compensation for Plaintiffs or any SDF, leaving it for "the Secretary" to "determine" the amount of any "financial assistance" for each eligible SDF. ARPA § 1006(b)(5). The ARPA section at issue also did not specify the total amount of compensation for all SDFs – Congress authorized the Secretary to provide financial assistance for SDFs totaling anywhere from $50.5 to $808 million, a wide range of discretion. *Id.* § 1006(a)-(b). Under these circumstances, Congress' enactment of ARPA § 1006(b)(5) cannot be construed as an unambiguous acceptance of a contractual offer.

Finally, Count III of Plaintiffs' complaint also fails for lack of consideration. *See Crewzers Fire Crew Transp., Inc. v. United States*, 741 F.3d 1380,1382 (Fed. Cir. 2014). Plaintiffs do not make any well-pleaded allegations indicating that they offered to waive a previously unasserted discrimination claim, nor did ARPA § 1006(b)(5) extinguish any legal right that they might have possessed prior to its enactment. *See* ARPA § 1006(b)(5). Accordingly, Plaintiffs remained free to litigate any previously unasserted discrimination claims notwithstanding the enactment of ARPA. *See id.*; *see also Crewzers*, 741 F.3d at 1383 (quoting *Ridge Runner Forestry v. Veneman*, 287 F.3d 1058, 1062 (Fed. Cir. 2002)) ("It is axiomatic that a valid contract cannot be based upon the illusory promise of one party").

Because Plaintiffs do not allege well-pleaded facts that, if taken as true, establish all the necessary elements to establish an implied-in-fact contract, Plaintiffs fail to state a plausible claim for breach of an implied-in-fact contract. *See Am. Bankers*, 932 F.3d at 1381-82. Accordingly, the Court **GRANTS** the Government's Motion to Dismiss Count III.

## IV. Conclusion

For the above reasons, this Court **GRANTS** the Government's Motion to Dismiss the entire complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge

# In the United States Court of Federal Claims

**No. 22-1473 C**
**Filed: April 28, 2023**

**JOHN BOYD, JR., et al.**
**Plaintiffs**

**v.** **JUDGMENT**

**THE UNITED STATES**
**Defendant**

Pursuant to the court's Opinion and Order, filed April 27, 2023, granting defendant's motion to dismiss,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that plaintiffs' complaint is dismissed for failure to state a claim upon which relief can be granted.

Lisa L. Reyes
Clerk of Court

By: s/ Debra L. Samler

Deputy Clerk

NOTE: As to appeal to the United States Court of Appeals for the Federal Circuit, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs. Filing fee is $505.00.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-2104

**Short Case Caption:** Boyd v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 7,595 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ______ lines of text.
- [ ] the filing contains ______ pages / ______ words / ______ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ______).

Date: 09/29/2023

Signature: /s/ Nada Djordjevic

Name: /s/ Nada Djordjevic

Save for Filing