# United States Court of Appeals for the Federal Circuit

---

**JOHN BOYD, JR., KARA BOYD,**
*Plaintiffs*

**LESTER BONNER, PRINCESS WILLIAMS,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-2104

---

Appeal from the United States Court of Federal Claims in No. 1:22-cv-01473-EJD, Senior Judge Edward J. Damich.

---

Decided: April 22, 2025

---

NADA DJORDJEVIC, DiCello Levitt LLP, Chicago, IL, argued for plaintiffs-appellants. Also represented by ADAM J. LEVITT.

DOUGLAS GLENN EDELSCHICK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, FRANKLIN E. WHITE, JR.; JUAN ALARCON, Office

of General Counsel, United States Department of Agriculture, Washington, DC.

---

Before STOLL and STARK, *Circuit Judges*, and GOLDBERG, *Chief District Judge*.[1]

GOLDBERG, *Chief District Judge*.

This case involves a breach of contract action brought against the United States Department of Agriculture regarding Farm Service Agency loans. Appellants, Lester Bonner and Princess Williams, individually and on behalf of a class of purportedly similarly-situated "socially disadvantaged farmers" (as that term is used in the applicable statute), appeal the decision of the United States Court of Federal Claims, which dismissed their complaint for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims. Because Appellants failed to plausibly allege facts demonstrating the formation of a contract, we affirm.

BACKGROUND

Congress enacted the American Rescue Plan Act of 2021 ("ARPA") to provide financial relief to small businesses adversely impacted by the COVID-19 pandemic. Pub. L. 117-2, 135 Stat. 4 (2021). Pursuant to § 1005 of that Act, the Secretary of the Department of Agriculture ("Secretary") was directed to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021," arising from direct or guaranteed Farm Service

---

[1] Honorable Mitchell S. Goldberg, Chief Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Agency ("FSA") loans. Pub. L. 117-2, § 1005, 135 Stat. 4 (2021).

Appellants are socially disadvantaged farmers, as defined by § 1005, who received FSA loans. Appellants' complaint alleged that the United States ("Government"), acting through the Secretary of Agriculture, breached an express or implied-in-fact contract by failing to provide debt relief after the Inflation Reduction Act repealed § 1005 of ARPA. Pub. L. 117-169, 136 Stat. 1818 (2022). The Court of Federal Claims dismissed that complaint for failure to state a claim for breach of contract because the complaint did not plausibly allege any of the four elements of contract formation.

Appellants appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review de novo whether the complaint was properly dismissed for failure to state a claim upon which relief may be granted. *Frankel v. United States*, 842 F.3d 1246, 1249 (Fed. Cir. 2016) (citing *Prairie Cty. v. United States*, 782 F.3d 685, 688 (Fed. Cir. 2015)). "To withstand a motion to dismiss under Rule 12(b)(6) of the [Rules of the Court of Federal Claims], a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "We take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017).

There are four requirements to form a contract with the Government: "(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to

bind the United States." *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003). These elements apply to both express and implied-in-fact contracts. *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1381 (Fed. Cir. 2019). Because Appellants have failed to allege facts sufficient to establish the first required element for a binding contract—mutuality of intent—we need not reach the other three elements of contract formation.

Mutuality of intent is "a threshold condition for contract formation." *Anderson*, 344 F.3d at 1353. A party must show "an objective manifestation of voluntary, mutual assent" to enter into a binding contract. *Id.* Evidence of Government intent may be found in the statute or regulations enabling the government's conduct or in documentary evidence, such as written agreements. *Am. Bankers Ass'n*, 932 F.3d at 1384 (examining statutory language for evidence of Government's intent to contract); *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1339 (Fed. Cir. 2021) (finding that regulations and agreement document evidenced mutuality of intent); *Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1365–66 (Fed. Cir. 2005) (finding that correspondence between Government and appellant was evidence of mutuality of intent to contract).

We first look to the language of the enabling statute for evidence of intent. "[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *Nat'l R.R. Passenger Corp. v. Atchison, Topeka and Santa Fe Ry. Co.*, 470 U.S. 451, 465–66, 105 S. Ct. 1441, 84 L Ed. 2d 432 (1985) (quoting *Dodge v. Bd. of Educ.*, 302 U.S. 74, 79, 58 S. Ct. 98, 82 L. Ed. 57 (1937)). "Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit

drastically the essential powers of a legislative body." *Id.* at 466. After examining the language of the statute, if "it is found that the payments are gratuities, involving no agreement of the parties," the statutory grant of payment does not create a contractual right. *Dodge*, 302 U.S. at 79.

Here, Appellants urge us to infer contractual intent from ARPA § 1005's language that the Secretary "shall provide a payment." Pub. L. 117-2, § 1005, 135 Stat. 4 (2021). Even mandatory language, like "shall," does not, however, automatically create a contractual obligation or prevent Congress from amending or repealing the provision. *See Members of the Peanut Quota Holders Ass'n v. United States*, 421 F.3d 1323, 1335 (Fed. Cir. 2005) ("Since Congress at all times retains the ability to amend statutes, a power which inheres in its authority to legislate, Congress at all times retains the right to revoke legislatively created entitlements.").

*Dodge* is instructive. 302 U.S. at 80. There, a state statute providing for payment of annuities to retiring teachers was amended to reduce the payment amount. Despite mandatory language that teachers who retired "shall be paid," the Supreme Court concluded that the statute did not create contractual rights. *Id.* Similarly here, the use of the term "shall" directing the Secretary to implement a statutory loan forgiveness program is not enough to overcome the presumption that the legislature did not intend to create private contractual rights in ARPA § 1005.

Appellants are correct that the Supreme Court has recognized evidence of an intent to contract where a statute "provide[s] for the execution of a written contract on behalf of the United States" or "speak[s] of a contract" with the United States. *Nat'l R.R. Passenger Corp.*, 470 U.S. at 467. But Appellants do not point to any language in ARPA § 1005 explicitly authorizing the Secretary to enter into contracts when implementing the financial assistance

program. Indeed, there is no contractual language in the statutory provision from which we could infer an intent to contract. Rather, ARPA § 1005 "merely declares a state policy, and directs a subordinate body to carry it into effect." *Dodge*, 302 U.S. at 78. Like the grant of compensation to retiring teachers in *Dodge*, payment to socially disadvantaged farmers under ARPA are gratuities.

Appellants also attempt to establish the Government's intent to contract by pointing to the language of the FSA-2601 form and related documents that refer to that form as an "offer letter." Appellant's Br. 15–17. They note that the FSA-2601 form informs recipients that they "are eligible for payment under the the [sic] American Rescue Plan Act of 2021 Loan Payment (ARPA) program." J.A. 43. Appellants also point out that the FSA-2601 form states that the recipient's "eligible direct loan debt will be paid in full" and that the payment amount, as calculated by FSA, can be accepted by selecting option one on the form. *Id.* These arguments are unavailing.

Importantly, the FSA-2601 form states that it is an "informational notice," which belies the notion of contractual intent. *Id.* Nonetheless, Appellants assert that FSA-2601 is an "offer" and not "informational" because it instructs recipients to select one of three options: (1) accept payment as calculated by FSA, (2) schedule a meeting with FSA "to discuss this notice," or (3) decline payment. J.A. 44. According to Appellants, because no further action is required after selecting option one, this form differs significantly from an informational notice that invites eligible recipients to apply for financial assistance.

In *American Bankers Ass'n*, the plaintiff received a letter from the government stating that its application for Reserve Bank stock was accepted and that dividends would be paid at a set statutory rate. 932 F.3d at 1379. When the enabling statute was later amended and the rate changed,

the plaintiff sued for breach of contract. *Id.* at 1378. This court concluded that intent to contract could not be inferred from the statute or the letter informing plaintiff that its application had been processed. *Id.* at 1384. Rather, the letter was found to be "a statement of policy based on the statutory dividend rate in effect at the time, not the language of a promise or contractual undertaking." *Id.*

While the facts of *American Bankers Ass'n* are slightly different than those before us, both cases place emphasis on the context of the government implementing a statutory program. *See id.* at 1382 ("[W]e must interpret the language in the context in which it is written."). To efficiently distribute statutory benefits, the government must identify eligible recipients, notify them of their statutory rights, and ensure they are willing to accept gratuitous payment. Under these circumstances, terms like "offer" and "acceptance" may be used to distribute statutory benefits, but do not necessarily demonstrate contractual intent. *See id.* ("[T]he use of terminology that carries contractual connotations when used in the private sector does not, on its own, establish such intent.").

In the case before us, there is no indication that the FSA-2601 form was a promise or contractual undertaking. Rather, ARPA § 1005 directed the Secretary to provide a statutory benefit, which required the Government to identify eligible recipients and administer payment. The FSA-2601 form noted the amount socially disadvantaged farmers were eligible to receive—120% of eligible FSA loans. A form like this, that merely notifies recipients of the statutory benefit they are entitled to receive, requests they confirm eligibility, and then provides instructions for accepting or declining gratuitous payment, does not demonstrate the requisite intent on the part of the Government to contract.

Appellants also asserted, for the first time at oral argument, that ARPA § 1005 created a legal obligation to provide payment, even if a valid contract was not formed. In support, Appellants point to the Supreme Court's finding in *Maine Community Health Options v. United States*, where the government was statutorily obligated under the Affordable Care Act to pay insurers for insurance plan losses. 590 U.S. 296, 300, 140 S. Ct. 1308, 206 L. Ed. 2d 764 (2020).

Arguments not raised in the Court of Federal Claims are forfeited. *Stauffer v. Brooks Bros. Grp.*, 758 F.3d 1314, 1322 (Fed. Cir. 2014). Moreover, *Maine Community Health Options* is distinguishable. In that case, the relevant statutory provision stated that the government "shall pay" if an insurance plan lost a certain amount of money in the marketplace. 590 U.S. at 300. Because the government had a statutory obligation to pay, the Supreme Court declined to address whether there was a contractual obligation. *Id.* at 328 n.15. Here, Congress revoked any statutory obligation when it passed the Inflation Reduction Act, which repealed ARPA § 1005.

## CONCLUSION

The Court of Federal Claims correctly concluded that Plaintiffs' complaint failed to state a claim upon which relief could be granted. Accordingly, we affirm.

## AFFIRMED

## COSTS

No costs.